1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA , | CASE NO. 08cr2424 BTM |
| Plaintiff, | **ORDER PRECLUDING GOVERNMENT FROM RELYING ON MAY 1997 REMOVAL** |
| vs. | |
| HAMILTON SILVA-VASQUEZ, | |
| Defendant. | |

Defendant Hamilton Silva-Vasquez ("defendant" or "Silva") is charged with violating 8 U.S.C. § 1326.  The defendant moves to dismiss the indictment on the basis that his underlying deportation in May, 1997 was invalid.  For the reasons explained below, the Court precludes the Government from relying on the May, 1997 removal.

## I.  BACKGROUND

The defendant initially entered the United States without inspection in either 1979 or 1982.  In 1988, Silva first obtained temporary resident status.  In 1989, he became a legal permanent resident.[1]

---

[1] The Government and the defendant stipulated to the foregoing residency facts at the March 18, 2009 hearing on this Motion.

1     On November 31, 1991, the defendant pleaded guilty to possession of an assault

2  weapon under California Penal Code § 12280(b) ("Section 12280(b)").[2] (Mar. 13, 2009 Prior

3  Conviction Documents, Certificate of Magistrate, Guilty Plea to Felony and Felony Complaint

4  1.) On October 17, 1996, the defendant was convicted of knowingly permitting the discharge

5  of a firearm from a vehicle he was driving in violation of California Penal Code § 12034(b)

6  ("Section 12034(b)"). (Mar. 11, 2009 Prior Conviction Documents, October 31, 1996 Abstract

7  of Judgment.)  He was sentenced to one year and four months in jail.  (Id.)

8     On April 22, 1997, the Immigration and Naturalization Service ("INS") issued a Notice

9  to Appear ("NTA") to Silva.  (Mar. 11, 2009 Prior Conviction Documents, Notice to Appear.)

10  The NTA alleged that the defendant was subject to removal pursuant to 8 U.S.C. §

11  1227(a)(2)(C) (1997) based on his conviction under Section12034(b) for a firearms offense.

12  (Id.)  On April 24, 1997, the INS lodged Additional Charges of Inadmissibility/Deportability

13  against Silva.   (Mar. 11, 2009 Prior Conviction Documents, Additional Charges of

14  Inadmissibility/Deportability.)  The INS deemed Silva further deportable pursuant to 8 U.S.C.

15  § 1227(a)(2)(A)(iii) (1997) because his Section 12034(b) offense constituted an aggravated

16  felony in addition to a firearms offense.  (Id.)  On May 6, 1997, an Immigration Judge ("IJ")

17  ordered the defendant deported to Mexico.  (Def.'s Mem. of P. & A. In Support of Mot. to

18  Dismiss, Deportation Proceedings 6.)  His deportation order was allegedly later reinstated

19  and Silva was ordered deported again on January 28, 2000 and May 9, 2003.  (Mar. 10,

20  2009 Govt. Res. to Def.'s Mot. to Dismiss 3.)

21     On June 29, 2008, Silva applied for entry at the San Ysidro Port of Entry claiming to

22  be a lawful permanent resident.  (Feb. 23, 2009 Govt. Res. In Opp'n to Def.'s Mot. to Dismiss

23  2.)  A record check revealed that he had been previously deported on May 9, 2003.  (Id.)  On

24  July 23, 2008 Silva was indicted for attempted entry after deportation under 8 U.S.C. § 1326.

25  (Id.)  He now moves to dismiss the indictment.

26

27                                    **II.  DISCUSSION**

28  _____

              [2] The record does not reveal the defendant's sentence for this crime.

                                        2
                                                                    08cr2424 BTM

1    Silva argues that the Court should dismiss the indictment because his underlying

2    deportation was invalid.  First, he claims that his due process rights were violated when he

3    was denied the right to counsel at his removal proceedings.  Specifically, Silva argues that

4    his participation in a mass silent waiver of the right to counsel violated due process.  Second,

5    he contends that he was prejudiced by this due process violation because a lawyer would

6    have advised him to seek various forms of relief for which he was plausibly eligible, including

7    cancellation of removal, voluntary departure, and adjustment of status.

8

9    A.  Standard

10    A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth

11    Amendment right to collaterally attack his removal order because the removal order serves

12    as a predicate element of his conviction.  United States v. Ubaldo-Figueroa, 364 F.3d 1042,

13    1047–48 (9th Cir. 2004).  To sustain a collateral attack under Section 1326(d) a defendant

14    must show that (1) he exhausted all administrative remedies available to him to appeal his

15    removal order; (2) the underlying removal proceedings at which the order was issued

16    improperly deprived him of the opportunity for judicial review; and (3) entry of the order was

17    fundamentally unfair.  Id. at 1048.  "An underlying removal order is fundamentally unfair if (1)

18    a defendant's due process rights were violated by defects in his underlying deportation

19    proceeding, and (2) he suffered prejudice as a result of the defects.  Id. (quoting United

20    States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998), cert. denied, 252 U.S. 849

21    (1998)).  A defendant bears the burden of showing that he was prejudiced.  United States

22    v. Leon-Leon, 35 F.3d 1428, 1431 (9th Cir. 1994; United States v. Gonzalez-Valerio, 342

23    F.3d 1051, 1056 (9th Cir. 2003).

24    An alien is barred from collaterally attacking his underlying removal order as a defense

25    to a Section 1326 charge "if he validly waived the right to appeal that order during the

26    deportation proceedings."  United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001),

27    cert. denied, 534 U.S. 879 (2001) (citations omitted).  The exhaustion requirement of Section

28    1326(d), however, "cannot bar collateral review of a deportation proceeding when the waiver

1   of [the] right to an administrative appeal did not comport with due process." Id. at 1183.  A

2   waiver of the right to appeal a removal order does not comport with due process when it is

3   not "considered and intelligent." Id.

4

5   B.  Right to Counsel

6       Silva alleges that the waiver of his right to appeal was not considered and intelligent

7   because he participated in an invalid mass waiver of the right to counsel.  The defendant

8   further claims that an attorney would have advised him to appeal and seek relief from

9   removal.  The right to counsel in immigration proceedings is rooted in the Due Process

10  Clause and codified at 8 U.S.C. § 1362 and 8 U.S.C. § 1229a(b)(4)(A).  Biwot v. Gonzalez,

11  403 F.3d 1094, 1098 (9th Cir. 2005).  "Although IJs may not be required to undertake

12  Herculean efforts to afford the right to counsel, at a minimum they must (1) inquire whether

13  the petitioner wishes counsel, (2) determine a reasonable period for obtaining counsel, and

14  (3) assess whether any waiver of counsel is knowing and voluntary." Ram v. Mukasey, 529

15  F.3d 1238, 1241 (9th Cir. 2008) (quoting Biwot, 403 F.3d at 1100).

16      At Silva's deportation hearing, the IJ jointly advised the group of aliens, including Silva,

17  of their right to counsel.  The IJ then asked the aliens, as a group, if any one of them had an

18  attorney.  (Def.'s Mem. of P. & A. In Support of Mot. to Dismiss, Deportation Proceedings 3.)

19  When no one in the group raised his hand, the IJ proceeded to say "[i]f you want more time

20  to get an attorney, raise your hand." (Id.)   Again, when no person raised his hand, the IJ

21  simply stated, "[s]o, we'll continue with you each representing yourself." (Id.)  The IJ never

22  individually evaluated whether Silva was waiving his right to counsel, and if so, if his waiver

23  was knowing and voluntary. Moreover, the record does not indicate that the IJ explained any

24  of the consequences of waiver of the right to counsel to the aliens.  "[E]ven for the most

25  competent alien, the IJ has an affirmative duty to assess whether any waiver of counsel is

26  knowing and voluntary." Ram, 529 F.3d at 1242 (citation omitted).

27      The Ninth Circuit has found that mass waivers of the right to appeal in immigration

28  proceedings do not comport with due process. United States v. Lopez-Vasquez, 1 F.3d 751,

754–755 (9th Cir. 1993).  Furthermore, the Ninth Circuit has held that group silence does not demonstrate a knowing and intelligent waiver of the right to appeal, and it is not sufficient to comply with regulations requiring that an IJ direct aliens to state for the record whether they wish to waive counsel.  <u>United States v. Ahumada-Aguilar</u>, 295 F.3d 943, 949–950 (9th Cir. 2002).  The Court therefore finds that the record does not support a finding that the defendant waived counsel.  Thus, his due process rights were violated when the IJ proceeded as if he waived his right to counsel through a mass silent waiver.  <u>See</u> <u>United States v. Garcia</u>, 258 Fed.Appx. 962, 963 (9th Cir. 2007).

Because the exhaustion requirement does not apply to bar Silva's claim and his invalid waiver of counsel improperly deprived him of the opportunity for judicial review, the Court next considers whether the underlying removal order was fundamentally unfair.

C.  <u>Prejudice</u>

Although the purported mass waiver of counsel violated the defendant's due process rights, "[p]rocedural flaws alone do not invalidate a deportation proceeding."  <u>Ahumada-Aguilar</u>, 295 F.3d at 950 (citing <u>United States v. Proa-Tovar</u>, 975 F.2d 592, 595 (9th Cir. 2002)).  Rather, Silva must show the requisite level of prejudice to establish that his removal proceedings were fundamentally unfair.  It remains unsettled in this Circuit whether a petitioner must show prejudice resulting from the denial of his right to counsel in an immigration proceeding.  <u>Id.</u>; <u>see also</u> <u>Balthazar-Alcazar v. I.N.S.</u>, 386 F.3d 940, 947 (9th Cir. 2004) (citations omitted).  In evaluating prejudice in the context of the violation of the right to counsel in removal proceedings, however, the Ninth Circuit has required that the petitioner at least demonstrate that the IJ's conduct in denying a petitioner counsel "potentially affected the outcome of the proceedings."  <u>Balthazar-Alcazar</u>, 386 F.3d at 947; <u>Biwot</u>, 403 F.3d at 1100; <u>Ram</u>, 529 F.3d at 1242.

Silva argues that the denial of his right to counsel potentially affected the outcome of his proceedings because he was plausibly eligible for relief.  Had he been represented, the defendant claims that his lawyer would have counseled him to seek various forms of relief

from removal.  Specifically, Silva contends that he was eligible for cancellation of removal, voluntary departure, and adjustment of status.

The Government claims, however, that the defendant had no plausible grounds for relief because one or both of his prior convictions constituted aggravated felonies.  A prior aggravated felony conviction precludes both cancellation of removal and voluntary departure.  See  8 U.S.C. § 1229b(a)(3) and 8 U.S.C.  § 1229c(b)(1)(C).  The Court first considers whether either of Silva's prior convictions qualify as an aggravated felony.  Because the Court finds below that neither conviction constitutes an aggravated felony, the Court next determines whether the defendant was plausibly eligible for relief.

### 1. Aggravated Felonies

Silva has two relevant convictions that the Government argues qualify as aggravated felonies: (1) his 1991 conviction for possession of an assault weapon under California Penal Code § 12280(b), and (2) his 1996 conviction for knowingly permitting an occupant to discharge a firearm from his vehicle under California Penal Code § 12034(b).  In evaluating each conviction, the Court must employ the two-step test set forth in Taylor v. United States, 495 U.S. 575 (1990) and Shepard v. United States, 544 U.S. 13 (2007).  See Kawashima v. Mukasey, 530 F.3d 1111, 1114 (9th Cir. 2008).  The Court first compares the elements of the statute under which the defendant was convicted to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43).  Id.  "Under this categorical approach, an offense qualifies as an aggravated felony if and only if the full range of conduct covered by the [statute of conviction] falls within the meaning of that term."  Id. (quoting Ferreira v. Ashcroft, 390 F.3d 1091, 1095 (9th Cir. 2004)).

If the statute of conviction penalizes a broader range of conduct than the relevant definition of an aggravated felony, the Court next applies the modified categorical approach.  Under the modified categorical approach, the Court reviews the record of conviction to determine whether the defendant was necessarily convicted of the elements of the federal generically defined crime.  Anaya-Ortiz v. Mukasey, 553 F.3d 1266, 1271 (9th Cir. 2009).

08cr2424 BTM

1   The Court may not "look beyond the record of conviction itself to the particular facts

2   underlying the conviction."   United States v. Vidal, 504 F.3d 1072, 1087 (9th Cir. 2007) (en

3   banc) (citations omitted).   In considering whether a defendant's guilty plea necessarily

4   admitted and supported a conviction for the generic crime, the Court is "'limited to examining

5   the statutory definition, charging document, written plea agreement, transcript of plea

6   colloquy, and any explicit factual finding by the trial judge to which [the defendant] assented."

7   Id. (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)).   Where the judgment does

8   not incorporate by reference facts included in the information, the Court may not rely upon

9   the information to find that the defendant was convicted of the federal generic crime.   Id. at

10   1087–1088.

11          The Court uses the two-step Taylor test to analyze each of Silva's convictions below.

12

13                      a.   The Defendant's Section 12280(b) Conviction

14          The Court can identify two potentially relevant aggravated felonies in 8 U.S.C. §

15   1101(a)(43) under which the defendant's Section 12280(b) conviction may fall: (1) a "crime

16   of violence . . . for which the term of imprisonment is at least one year" within subsection (F),

17   or (2) a "firearms related offense" within subsection (E)(ii).   As explained in more detail below,

18   the Court finds that Section 12280(b) constitutes neither a crime of violence nor a firearms

19   related aggravated felony.

20

21                           i.   Crime of Violence

22          The Government argues that Section 12280(b) is a categorical "crime of violence"

23   qualifying as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).   Section 12280(b) states

24   that "any person who, within this state, possesses any assault weapon . . . is guilty of a public

25   offense and upon conviction shall be punished by imprisonment in the state prison, or in a

26   county jail, not exceeding one year."   Cal. Penal Code § 12280(b) (1991).   A "crime of

27   violence" within 8 U.S.C. § 1101(a)(43)(F) is defined pursuant to 8 U.S.C. § 16 as "(a) an

28   offense that has as an element the use, attempted use, or threatened use of physical force

1  against the person or property of another, or (b) any other offense that is a felony and that,

2  by its nature, involves a substantial risk that physical force against the person or property of

3  another may be used in the course of committing the offense."  Because Section 12280(b)

4  does not contain as an element the "use, attempted use, or threatened use of physical force

5  against the person or property of another, the Court only considers whether  the statute is

6  a crime of violence within Section 16(b).

7       In United States v. Serna, 435 F.3d 1046, 1049 (9th Cir. 2006), the Ninth Circuit held

8  that possession of an assault weapon under Section 12280(b) was not a crime of violence

9  within Section 4B1.2(a) of the Sentencing Guidelines.  Section 4B1.2(a) defines a crime of

10  violence similarly to Section 16.  Under Section 4B1.2(a), a crime of violence is "any offense

11  under federal or state law, punishable by imprisonment for a term exceeding one year, that

12  . . . has as an element the use, attempted use, or threatened use of physical force against

13  the person of another . . . or involves conduct that presents a serious potential risk of

14  physical injury to another."  Serna found that a conviction under Section 12280(b) could not

15  constitute a crime of violence within Section 4B1.2(a) because mere possession of an assault

16  weapon, with no further requirement that the possession occur in a context prone to violence,

17  did not present a serious potential risk of physical injury to another.  435 F.3d at 1048–49.

18  "[P]ossessing an object designed to be lethal does not alone pose a 'serious potential risk'

19  of physical injury . . . [s]o long as the item in question has substantial legitimate uses, its

20  mere possession cannot, without more, constitute a crime of violence."  Id. at 1048.

21       Serna's reasoning applies equally here.  Possession of an assault weapon does not

22  require any use, attempted use, or threatened use of force to constitute an offense under

23  Section 12280(b).  The passive possession of the assault weapon itself is sufficient to

24  constitute the offense.  Furthermore, while possessing an assault weapon is per se illegal,

25  the use to which it may be employed, such as a collector's item or for target shooting, is not

26  by itself illegal but for the nature of the weapon.  The Court therefore finds that Section

27  12280(b) proscribes conduct outside the generic definition of a crime of violence under

28  Section 16 and does not categorically qualify as an aggravated felony under 8 U.S.C. §

08cr2424 BTM

1   1101(a)(43)(F).

2   Because Section 12280(b) proscribes a broader range of conduct than the generic

3   definition of a crime of violence, the Court next applies the modified categorical approach.

4   Here, the record of conviction includes the Certificate and Order of the Magistrate of Guilty

5   Plea to Felony ("plea form") and the Felony Complaint ("complaint").  The plea form states

6   only that the defendant pleaded guilty to Count 4 as charged in the complaint.[3]  Furthermore,

7   Count 4 of the complaint merely alleges that "on or about November 3, 1990, in the county

8   of Los Angeles, the crime of POSSESSION OF AN ASSAULT WEAPON, in violation of

9   PENAL CODE SECTION 12280(b), a felony, was committed by HAMILTON DESILYA [sic]

10  VASQUEZ, who did willfully and unlawfully possess an assault weapon, to wit: Interdynamic

11  KG-99."  (Mar. 13, 2009 Prior Conviction Documents, Certificate of Magistrate, Guilty Plea

12  to Felony and Felony Complaint 5.)

13  The complaint and plea form follow the statute's language closely.  The plea form only

14  incorporates facts included in Count 4, so the Court may not rely upon other facts alleged in

15  the complaint.  See Vidal, 504 F.3d at 1087–1088.  As a result, the record of conviction does

16  not reveal any additional facts demonstrating that the defendant was necessarily convicted

17  of a crime of violence as defined by Section 16.  No facts Silva admitted as part of his

18  conviction suggest that the specific weapon he possessed, an Interdynamic KG99, had no

19  lawful uses or that his crime specifically occurred in a context of violence to people or

20  property.  Therefore, the defendant's conviction under Section 12280(b) does not qualify as

21  an aggravated felony pursuant to 8 U.S.C. § 1101(a)(43)(F).

22  ///

23  ///

24

25      [3]  The plea form reads, "defendant pleaded guilty to the following offense(s) charged
    in the said complaint, to wit: Count 4 12280 PC (Counts 2,3 over to P&S) (Special Allegations
26  PC 12022(a)(2) and PC 12022(a)(2))."  This language appears to indicate that the defendant
    pleaded guilty to possession of an assault weapon under Section 12280, and that the
27  charges under Counts 2 (conspiracy to commit murder) and 3 (conspiracy to commit a crime)
    were put over to the sentencing hearing for dismissal.  The Government does not contend
28  that "Counts 2,3 over to P&S" and "Special Allegations PC 12022(a)(2)" indicate any
    additional facts to which the defendant admitted as a part of his plea.

ii. <u>Firearms Related Offense</u>

The only other potentially relevant aggravated felony within 8 U.S.C. § 1101(a)(43) comes within subsection E(ii), which relates to firearms offenses.  Subsection E(ii) further incorporates 18 U.S.C. § 922(g)(1)–(5), (n), (o), (p), and (r) and 18 U.S.C. § 924(b) and (h).  If the full range of conduct covered by Section 12280(b)  falls within the meaning of any of the incorporated federal statutory firearms offenses, it will qualify as an aggravated felony.

Subsection (g) of Section 922 makes it unlawful for an individual who meets certain prerequisites[4] to "ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  <u>See</u> 18 U.S.C. § 922(g).  Although Section 12280(b) penalizes possession, it includes none of the prerequisites outlined in subparts (1)–(5).  The Court disagrees with the Government's contention that Section 12280(b) may qualify as a firearms related aggravated felony within Section 922(g)(1), which proscribes possession of a firearm in commerce by a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year."  Because Section 12280(b) includes no prior conviction requirement, it prohibits conduct beyond the meaning of Section 922(g)(1) and does not categorically qualify as an aggravated felony as defined by that provision.  The modified categorical approach does not apply in this context because Section 922(g)(1) has elements that are not included at all in Section 12280(b).  <u>Navarro-Lopez v. Gonzales</u>, 503 F.3d 1063, 1073 (9th Cir. 2007); <u>see also</u> <u>United States v. Aguila-Montes</u>, 553 F.3d 1229, 1233–1234 (9th Cir. 2009).

The full range of conduct proscribed by Section 12280(b) likewise does not fall within the meaning of subsections (n), (o), (p), or (r) of Section 922.  The Government does not allege, nor does the Court's own inspection show, that subsections (n), (p), or (r), apply.  At

---

[4]The Section 922(g) prerequisites included within 8 U.S.C. § 1101(a)(43)(E)(ii) are as follows: "any person – (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; (2) who is a fugitive of justice; (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)); (4) who has been adjudicated as a mental defective or who has been committed to a mental institution; [or] (5) who, being an alien, is illegally or unlawfully in the United States."  18 U.S.C. § 922(g)(1)–(5) (1997).

08cr2424 BTM

the March 18, 2009 hearing on this motion, however, the Government suggested that Section 12280(b) may qualify as a firearms related aggravated felony pursuant to subsection (o) of Section 922.  The Court disagrees.  Section 922(o) makes it "unlawful for any person to transfer or possess a machine gun."  Section 12280(b) penalizes possession of *any* assault weapon, not merely machine guns, so the statute of conviction itself reaches more widely than the relevant aggravated felony.  Nor does the record of conviction demonstrate that Silva admitted to possessing a machine gun in his guilty plea.  The plea form incorporates only Count 4 of the complaint, which states simply that the defendant possessed an Interdynamic KG-99.  The Government has offered no additional evidence to show that by admitting to possession of an Interdynamic KG-99, Silva necessarily admitted to possession of a machine gun.  The Court therefore finds that the defendant's Section 12280(b) conviction does not fall within the meaning of an aggravated felony as defined by Section 922(o).

Subsections (b) and (h) of 18 U.S.C. § 924 are also irrelevant.  Subsection (b) of Section 924 requires proof that the offender "ship[], transport[], or receive[] a firearm . . . in interstate or foreign commerce" with "intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith."  Section 12280(b) contains no requirement that the firearm possessed be shipped, transported, or received in interstate commerce.  Moreover, Section 12280(b) does not contain the mens rea element of Section 924(b).  Section 12280(b), therefore, does not categorically qualify as a firearms related aggravated felony defined by Section 924(b).  The modified categorical approach cannot be used here to determine whether the conviction constitutes a Section 924(b) firearms related aggravated felony because Section 924(b) includes elements that are not in Section 12280(b).  Navarro-Lopez, 503 F.3d at 1073.  Thus, Silva's Section 12280(b) conviction cannot constitute an aggravated felony defined by Section 924(b) using the modified categorical approach.

Section 924(h), which proscribes the knowing transfer of a firearm with knowledge that

08cr2424 BTM

it will be used to commit a crime of violence, is also inapposite.  Section 12280(b) punishes only possession, not transfer, of a firearm, and does not include an element requiring knowledge that the firearm will be used in any particular fashion, let alone to commit a crime of violence.  As noted above, the modified categorical approach is, therefore, inapplicable. Id.  Consequently, the defendant's Section 12280(b) conviction does not qualify as a firearms related aggravated felony defined by Section 924(h).

For the reasons explained above, the Court finds that Silva's conviction under California Penal Code § 12280(b) does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) or (E)(ii).

### b.  The Defendant's Section 12034(b) Conviction

As with the defendant's Section 12280(b) conviction, 8 U.S.C. § 1101(a)(43) contains two classes of relevant aggravated felonies under which his 1996 Section 12034(b) conviction may fall: (1) a "crime of violence . . . for which the term of imprisonment is at least one year" within subsection (F), or (2) a "firearms related offense" within subsection (E)(ii). As explained in more detail below, the Court finds that the defendant's Section 12034(b) conviction constitutes neither a crime of violence nor a firearms related aggravated felony.

### i.  Crime of Violence

The Court again employs the two-step Taylor test to determine whether Section 12034(b) qualifies as an aggravated felony.  The Government argues that Section 12034(b) is a categorical "crime of violence" within 18 U.S.C. § 16 ("Section 16") and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).

Section 12034(b) states that "[a]ny driver or owner of any motor vehicle . . . who knowingly permits any other person to discharge any firearm from the vehicle is punishable by imprisonment in the county jail for not more than one year or in state prison for 16 months

08cr2424 BTM

or two or three years." Cal. Penal Code § 12034(b) (1996). The Court first notes that the Government rightly does not argue that Section 12034(b) comes within Section 16(a), since it does not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." Accordingly, to constitute a crime of violence, the full range of conduct covered by Section 12034(b) must come under Section 16(b).

The Government claims that Section 12034(b), by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. Both the Government and the defendant agree that a statute proscribing mere recklessness or negligence reaches more broadly than the crime of violence definition in Section 16(b). Rather, to be a predicate offense under Section 16(b), the offense itself must involve a substantial risk that force will be intentionally used against the person or property of another during its commission. See United States v. Gomez-Leon, 545 F.3d 777, 787 (9th Cir. 2008).

Although Section 12034(b) penalizes only "knowing" behavior, it still fails to categorically qualify as a crime of violence within Section 16(b). Section 12034(b) prohibits conduct that does not involve the substantial risk that physical force will be intentionally used against the person or property of another. For example, the driver or owner of a vehicle who knowingly permitted an occupant to fire at a target in an empty field, nowhere near the person or property of another, could be subject to prosecution under Section 12034(b). Similarly, a vehicle driver or owner could suffer punishment under Section 12034(b) for knowingly permitting an occupant to fire celebratory shots out of his vehicle in a rural area on the Fourth of July.

The Government argues that Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007) requires the defendant to point to other cases demonstrating that the California courts have applied Section 12034(b) in circumstances such as those outlined by the Court above, to conduct falling outside the generic federal definition of a crime of violence. However, where a statute "explicitly defines a crime more broadly than the generic definition, no 'legal

08cr2424 BTM

1   imagination' is required to hold that a realistic probability exists that the state will apply its

2   statute to conduct that falls outside the generic definition of the crime." <u>United States v.</u>

3   <u>Grisel</u>, 488 F.3d 844, 850 (9th Cir. 2007); <u>see also</u> <u>United States v. Jennings</u>, 515 F.3d 980,

4   989 n. 9 (9th Cir. 2008) (holding that Washington statute proscribing attempts to elude a

5   police vehicle was expressly broader than the generic definition of a violent felony because

6   it explicitly encompassed conduct not presenting a potential risk of harm to another, but

7   merely a wanton or wilful disregard for the property of others).

8           Section 12034(b) is broader than the generic federal definition of a crime of violence.

9   The state statute contains no requirement that the firearm discharge occur in a context

10  creating any risk at all that physical force will be applied to the person or property of another.

11  A vehicle owner or driver may violate the statute by knowingly permitting an occupant to fire

12  a gun from his car even if he believes that no harm to the person or property of another will

13  result.  The offense of permitting another to discharge a firearm under Section 12034(b) is

14  a general intent crime, committed merely by doing the proscribed act, and there is no

15  requirement that the defendant even intend the discharge.  <u>People v. Laster</u>, 52 Cal. App.

16  4th 1450, 1468 (1997).  Section 12034(b) has no requirement that the gun be fired at or near

17  the person or property of another.  Indeed, Section 12034(c) penalizes the discharge of a

18  firearm from a motor vehicle at another person (other than a person in a motor vehicle) more

19  severely than Section 12034(b), which has no element of discharge at a another person or

20  property.  Thus, the legislature intended that 12034(b) apply where the discharge of the

21  firearm was not aimed at or near any person or property.  "[W]hen 'the state statute's greater

22  breadth is evident from its text,' a defendant may rely on the statutory language to establish

23  the statute as overly inclusive." <u>United States v. Vidal</u>, 504 F.3d 1072, 1082 (9th Cir. 2007)

24  (<u>quoting</u> <u>Grisel</u>, 502 F.3d at 850.  The Court therefore finds that, based on its broad statutory

25  text, Section 12034(b) does not categorically qualify as a crime of violence.

26          The Court next applies the modified categorical approach.  The Government offers

27  three pieces of evidence related to the defendant's Section 12034(b) conviction: (1) the

28  abstract of judgment; (2) the information; and (3) a California Court of Appeals decision in

the case of his co-defendant, noting the defendant's testimony in that case.  The defendant's abstract of judgment indicates only that he was convicted of Section 12034(b), described as "DISCHARGE FIREARM FROM VEHICLE."  The abstract of judgment includes no statement of facts to which Silva admitted.  Furthermore, it does not incorporate by reference any of the factual allegations made in the information.  <u>See</u> <u>Vidal</u>, 504 F.3d at 1087–1088.

Additionally, although Silva's testimony in his co-defendant's case may reveal evidence of the crime he *committed*, it is not evidence of the crime of which he was *convicted*.  Silva's testimony falls outside his record of conviction.  It was not part of his plea agreement, recorded in the transcript of his plea colloquy, or contained in the judgment.  <u>See</u> <u>Shepard</u>, 544 U.S. at 16 (listing evidence courts may consider to determine whether defendant's plea necessarily admits to conviction for a generic crime).  Thus, the Court cannot consider the report of the defendant's testimony as part of the modified categorical approach.

Relying only on the abstract of judgment, the defendant's record of conviction does not establish that he was necessarily convicted of any facts beyond Section 12034(b)'s statutory elements.  The Court therefore finds that the defendant's Section 12034(b) conviction was not a crime of violence as defined by Section 16(b) and does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).

### ii.  <u>Firearms Related Offense</u>

The Government claims that Section 12034(b) also constitutes an aggravated felony within 8 U.S.C. § 1101(a)(43)(E)(ii), relating to firearms offenses.  As with Section 12280(b) above, the Court finds that the full range of conduct prohibited by Section 12034(b) falls outside the scope of 18 U.S.C. § 922(g)(1)–(5), (n), (o), (p), and (r), and 18 U.S.C. § 924(b) and (h), which are incorporated within 8 U.S.C. § 1101(a)(43)(E)(ii).

Because the Government does not urge the Court to consider subsections (g)(2)–(5), (n), (o), (p), or (r) of Section 922, and they appear facially inapplicable, the Court will not

evaluate whether the full range of conduct prohibited by Section 12034(b) falls within their meaning.   The Government argues, however, that the defendant's Section 12034(b) conviction is congruent with Section 922(g)(1).  The Court disagrees.

The statute of conviction here reaches much more broadly than the firearms related aggravated felony defined by Section 922(g)(1).  Section 922(g)(1) makes it unlawful for a person to "ship or transport in interstate commerce, or possess in or affecting commerce, any firearm" *only* if that person "has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year."  In contrast, Section 12034(b) contains no possession or prior conviction requirement.  Some individuals prosecuted under the state statute will not have been in possession of the firearm, they will be the driver where the passenger discharges the firearm.  Additionally, some individuals prosecuted under the statute will not have any prior convictions, or convictions for crimes punishable by more than one year of imprisonment.  Consequently, Section 12034(b) cannot categorically qualify as a firearms related aggravated felony defined by Section 922(g)(1).

While Silva may have *committed* an offense covered by Section 922(g)(1), he was not *convicted* of such an offense.  Since Section 922(g)(1) contains elements not in Section 12034(b), the modified categorical approach is inapplicable.  Navarro-Lopez, 503 F.3d at 1073.

The Government's argument that the full range of conduct proscribed by Section 12034(b) falls within the meaning of Section 924(b) likewise fails.  Section 924(b) requires that the offender "ship[], transport[], or receive[]" a firearm in interstate commerce "with the intent to commit therewith an offense punishable by imprisonment for a term exceeding one year."  Section 12034(b) includes no requirement that an offender ship, transport, or receive a firearm in interstate commerce.  Moreover, the Government incorrectly claims that a violator of Section 12034(b) necessarily intends that his firing passenger commit an offense under California Penal Code § 246, which is punishable by imprisonment for a term exceeding one year.  Section 246, however, makes it unlawful to shoot *at* an *inhabited*

dwelling house, housecar, or camper, or *at* an *occupied* building, vehicle, or aircraft. An individual may violate Section 12034(b) without intending that his passenger shoot at anything in particular. A Section 12034(b) offender might, in fact, specifically intend that his passenger *not* fire at an inhabited or occupied area. Thus, Section 12034(b) does not categorically qualify as a firearms related aggravated felony defined by Section 924(b) and incorporated by 8 U.S.C. § 1101(a)(43)(E)(ii). Again, because Section 924(b) has elements not in Section 12034(b), the modified categorical approach is inapplicable. Navarro-Lopez, 503 F.3d at 1073.

The Government does not contend that Section 12034(b) qualifies as a firearms related aggravated felony under Section 924(h). Upon its own inspection, the Court finds Section 924(h) inapposite. Section 924(h) prohibits the knowing transfer of a firearm with the knowledge that it will be used to commit a crime of violence or drug trafficking crime. Section 12034(b) does not contain a transfer element. Additionally, an offender may violate Section 12034(b) without any knowledge that the firing occupant will commit a crime of violence or drug trafficking crime by discharging the firearm from his vehicle. Therefore, the defendant's Section 12034(b) conviction does not qualify as a firearms related aggravated felony defined by Section 924(h) under the categorical approach, and the modified categorical approach is inapplicable.

For the reasons explained above, the Court finds that the defendant's conviction under California Penal Code § 12034(b) does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) or (E)(ii).

2. <u>Available Relief</u>

Silva argues that since he was not convicted of an aggravated felony, he was eligible for three potential forms of relief at the time of his removal: cancellation of removal, voluntary

17

08cr2424 BTM

1  departure, and adjustment of status.[5]

2

3       a. Cancellation of Removal

4

5       The Attorney General may cancel removal for an alien if he (1) has been lawfully

6  admitted for permanent residence for not less than 5 years, (2) has resided in the United

7  States continuously for 7 years after having been admitted in any status, and (3) has not

8  been convicted of an aggravated felony.  8 U.S.C. § 1229b(a).

9       Silva was admitted for permanent residence in 1989, more than five years prior to his

10 removable offense in 1996.  He resided continuously in the United States for more than

11 seven years after being admitted as a lawful temporary resident in 1988.  Thus, having met

12 the residency requirements and sustained no aggravated felony convictions at the time of his

13 removal proceedings, Silva was eligible for cancellation of removal.  Had Silva been

14 represented by an attorney, he or she may have counseled him to apply for this form of relief,

15 thereby potentially changing the outcome of his proceeding.

16

17       b. Voluntary Departure

18

19       Voluntary departure allows the Attorney General to permit an alien to voluntarily depart

20 the United States at the alien's own expense, in lieu of being subject to removal proceedings

21 under 8 U.S.C. § 1229a, or prior to their completion, as long as the alien is not removable for

22 having committed an aggravated felony or terrorist activities.  See 8 U.S.C. § 1229c(b).  As

23 the Court determined above, the defendant was not removable on aggravated felony

24 _____

25     [5] The Government may argue that, regardless of his eligibility, the defendant would
   not have in fact applied for relief.  During his removal proceedings, when questioned by the
26 IJ about why he did not want to apply for cancellation of removal, Silva stated "I don't want
   to stay here no more."  (Def.'s Mem. of P. & A. In Support of Mot. to Dismiss, Deportation
27 Proceedings 6.)  It is unclear, however, whether the defendant meant that he did not wish
   to stay in the *United States* or, rather, that he merely did not want to remain in *custody*.  If
28 the defendant had been represented, his lawyer could have explained to him that he could
   apply for bail pending any application for relief.  Thus, Silva's statement does not affect the
   Court's prejudice analysis.

grounds.   The Government does not allege that he participated in terrorist activities. Therefore, Silva was plausibly eligible for voluntary departure and an attorney may have counseled him to seek it.

### c.  Adjustment of Status

Silva also argues that he was eligible for adjustment of status.  Adjustment of status allows a removable alien who would be admissible to the United States if he were seeking to enter the country to adjust his status to that of an alien seeking entry.  See Drax v. Reno, 338 F.3d 98, 113 (2d Cir. 2003).  "Adjustment of status is merely a procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States." Matter of Rainford, 20 I. & N. Dec. 598, 601 (BIA 1992) (citations omitted).  Grounds of removability and inadmissibility are not identical.  Therefore, an alien may be removable on the basis of a prior conviction but eligible for adjustment of status because that conviction does not also make him inadmissible.  The BIA has held that an alien whose prior conviction is a ground of removability but not inadmissibility may adjust his status to lawful permanent resident, rendering him no longer removable for that conviction.  Id. at 602.

Under this form of relief, the Attorney General may, in his discretion, adjust the status of an alien who was inspected and admitted or paroled into the United States to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (3) an immigrant visa is immediately available to him at the time his application was filed.  8 U.S.C. § 1255(a).

First, Silva became a lawful permanent resident in 1989, satisfying the initial requirement for adjustment of status.  Second, Silva claims, and the Government does not dispute, that his mother is a United States citizen.  Therefore, had the defendant been represented at his removal proceedings, his lawyer could have moved for a continuance while he pursued adjustment of status.  Silva's mother, upon the advice of his lawyer, could

have filed an I-130 visa petition at that time.  The defendant would then have obtained a priority date  sometime in or around May, 1997.  As the unmarried son of a United States citizen, he would have fallen into the first preference category.  While the Court cannot ascertain how long it would have taken for Silva's visa petition to be approved, May 22, 1997 priority dates became current in September, 1998.  See U.S. Dep't of State, Bureau of Consular Affairs, Visa Bulletin, Sept. 1998.  Thus, if Silva's visa petition was approved by September, 1998,a visa would have been immediately available and  he could have applied for adjustment of status.  While the Court cannot be certain now that the IJ would have in fact granted the defendant a fifteen month continuance, he certainly had the discretion to do so. See 8 C.F.R. § 3.31(c) (1997) ("[t]he Immigration Judge may set and extend time limits for the filing of applications and related documents . . ."); 8 C.F.R. § 240.6 (1997) (allowing the IJ to grant a reasonable adjournment after the removal hearing has begun either at his or her own instance or, for good cause shown, upon application by the respondent or the Service).

Third, Silva was not inadmissible on the basis of his weapons conviction.  As the defendant notes, while conviction for a firearms offense is a ground of removability under 8 U.S.C. 1227(a), it is not a ground of inadmissibility pursuant to 8 U.S.C. § 1182(a)(2).  See Matter of Rainford, 20 I. & N. at 600 (petitioner deportable for firearms offense but not inadmissible since no specific firearms exclusion ground);  Drax, 338 F.3d at 116–117 (petitioner with prior weapons conviction and drug conviction could apply simultaneously for 212(c) relief for his drug conviction, waiving inadmissibility, and adjustment of status for his weapons conviction, waiving removability).  The Government has not identified any specific ground of inadmissibility under 8 U.S.C. § 1182(a) that would apply to bar adjustment of status by the defendant.

Thus, Silva also had a plausible claim for adjustment of status relief. Because he was plausibly eligible for cancellation of removal, voluntary departure, and adjustment of status, Silva was prejudiced by the denial of his right to counsel, who could have explained to him these potential avenues of relief from removal.  The Court thereby finds that the defendant's removal proceeding was fundamentally unfair and the underlying removal order was invalid.

08cr2424 BTM

### III.  CONCLUSION

For the reasons explained above, the Court finds that the defendant's due process rights were violated by the mass waiver of the right to counsel at his underlying removal proceeding.  Furthermore, the defendant was prejudiced by this due process violation because he was plausibly eligible for relief and a lawyer could have potentially affected the outcome of his immigration proceeding.  The Court, therefore, **GRANTS** the defendant's Motion insofar as it seeks to preclude the Government from relying on the May 1997 removal to support a conviction under 8 U.S.C. § 1326.  If the Government does not rely on any other valid deportation, the indictment must be dismissed.

**IT IS SO ORDERED.**

DATED:  April 3, 2009

Honorable Barry Ted Moskowitz
United States District Judge

08cr2424 BTM